TERRY ALLEN et al., Appellants, v CITY OF NEW YORK et al., Respondents. [855 NYS2d 279]—

Carpinello, J.

Plaintiffs live downstream from the Pepacton Dam and

reservoir. In this negligence action, they claim that defendants are responsible for flood damage to their properties occurring in the months of September 2004 and April 2005. Specifically, plaintiffs contend that, in the context of managing water levels in the reservoir, defendants failed to implement flood control plans, failed to effectuate a controlled release of water in anticipation of the storms and failed to warn of the impending flooding. The crux of plaintiffs' claims is that defendants could have lowered the level of the reservoir before the storms thereby eliminating or ameliorating the extent of the resultant flooding. The instant appeal arises out of a successful motion by defendants to dismiss the complaint for failure to state a claim (*see* CPLR 3211 [a] [7]).

It is now well established that the criterion in considering a motion to dismiss under CPLR 3211 (a) (7) "is whether the proponent of the pleading has a cause of action, not whether he has stated one" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]; *see Griffin v Anslow*, 17 AD3d 889, 891 [2005]). Affidavits and other evidentiary material may be considered to "establish conclusively that [the] plaintiff has no cause of action" (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 [1976]; *see Wilhelmina Models, Inc. v Fleisher*, 19 AD3d 267, 268-269 [2005]). "This is particularly true where the plaintiff submits affidavits in opposing the motion" (*Albert v Solimon*, 252 AD2d 139, 140 [1998], *affd* 94 NY2d 771 [1999]).

In support of their motion to dismiss, defendants established that the dam and reservoir were built to establish a drinking water supply for defendant City of New York and not for flood control purposes (*see Iodice v State of New York*, 277 App Div 647 [1951], *affd* 303 NY 740 [1951]). Notably, in *Iodice*, the claimants similarly alleged that they had suffered property damage because the State negligently failed to maintain water in a reservoir at a sufficiently low level to prevent flooding caused by excessive rainfall. The Fourth Department concluded that, since the reservoir at issue was not constructed for flood control purposes, there was no legal duty of any kind either under statute or common law "to regulate the outflow of water from the dam so as to minimize or eliminate the flooding of lands below to an extent greater than would be the case if the river flowed naturally" (*id.* at 649). In finding no basis for liability, the Fourth Department further noted that "a dam owner has the right to let nature take its course, i.e., the right to permit flood waters to go over his dam where the volume of water cast into the channel below the dam does not exceed the volume coming in above the dam" (*id.* at 649-650). We find *Iodice* to be determinative here.

In addition to the mandates of *Iodice*, we note also that defendants submitted documentary evidence establishing that during the storms at issue, the amount of water flowing into the reservoir actually *exceeded* the amount flowing out, that the storm water was released over a longer period of time than it otherwise would have been without a dam and that, therefore, the reservoir and dam had an *ameliorative* impact, not an aggravating one, on the subject flooding (*compare Mei v City of New York*, 2006 WL 2997111, 2006 US Dist LEXIS 75871 [SD NY 2006]). None of the affidavits submitted by plaintiffs disputes this showing.

Because this case falls squarely within the confines of *Iodice*, Supreme Court properly found that plaintiffs have no legally cognizable claim and dismissed the complaint. We have considered plaintiffs' remaining arguments, including those alleging the existence of a special relationship, and find them to be unpersuasive.

Cardona, P.J., Lahtinen, Kane and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.